Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com
[Additional Counsel on Signature Page]

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHIVA STEIN, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAVIUM, INC., SYED B. ALI, ANTHONY S. THORNLEY, SANJAY MEHROTRA, EDWARD H. FRANK, BRAD W. BUSS, and MADHAV V. RAJAN,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Shiva Stein ("Plaintiff"), on behalf of herself and all other similarly situated public shareholders of Cavium Pharmaceuticals, Inc. ("Cavium" or the "Company") (the "Class"), by her attorneys, makes the following allegations against the Company and the members of the board of directors of Cavium (the "Board" or "Individual Defendants", along with Cavium, collectively referred to as the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Transaction") between Cavium and Marvell Technology Group Ltd. ("Marvell"). The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

**INTRODUCTION**

1. This is a shareholder class action brought by Plaintiff on behalf of herself and all other similarly situated public shareholders of Cavium to enjoin the Proposed Transaction whereby the Board has agreed to sell Cavium to Kauai Acquisition Corp. (the "Merger Sub"), a wholly owned subsidiary of Marvell, for $40.00 in cash and 2.1757 shares of Marvell common stock for each share of Cavium stock owned (the "Merger Consideration"). The Proposed Transaction is at an unfair price and on grossly unfair and inadequate terms. The total equity value of the Proposed Transaction is approximately $6 billion. The Board has unanimously recommended to the Company's stockholders that they vote for the Proposed Transaction. The Defendants expect to complete the Proposed Transaction in mid-calendar of 2018.

2. To convince Cavium stockholders to vote in favor of the Proposed Transaction, on December 21, 2017, the Board authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "S-4") with the Securities and Exchange Commission ("SEC"). The S-4 violates Sections 14(a) and 20(a) of the Exchange Act by noncompliance of Regulation G and SEC Rule 14a-9 (17 C.F.R. § 244.100 and 17 C.F.R. 240.14a-9 respectively).

- 1 -

3. Defendants have failed to disclose certain material information necessary for Cavium stockholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the S-4 materially incomplete and misleading.

4. In particular, the S-4 contains materially incomplete and misleading information concerning the financial forecasts for the Company and Marvell that were both prepared and relied upon by the Board in recommending the Company's stockholders to vote in favor of the Proposed Transaction. The same forecasts were used by Cavium's financial advisors, Qatalyst Partners LP ("Qatalyst") and J.P. Morgan Securities LLC ("J.P. Morgan"), in conducting their valuation analyses in support of their fairness opinions.

5. The material information that has been omitted from the S-4 must be disclosed prior to the forthcoming stockholder vote in order to allow the stockholders to make an informed decision regarding the Proposed Transaction.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of Regulation G and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, all material information discussed below is disclosed to Cavium stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated without corrective disclosures, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8. This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that does sufficient business in California, or an individual who has sufficient minimum contacts with California to render the exercise of

jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice. All of the Defendants conduct business and/or maintain offices in California. The headquarters of Cavium is located at 2315 N. First Street, San Jose, CA 95131.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Cavium is headquartered in this District.

**PARTIES**

10. Plaintiff has owned the common stock of Cavium since prior to the announcement of the Proposed Transaction herein complained of, and continue to own this stock.

11. Cavium is a corporation duly organized and existing under the laws of the State of Delaware and maintains its principal offices in San Jose, California. Cavium is, and at all relevant times hereto was, listed and traded on the NASDAQ under the symbol "CAVM". Cavium is a provider of integrated semiconductor processors that enable intelligent processing for wired and wireless infrastructure and cloud for networking, communications, storage and security applications.

12. Defendant Syed B Ali has served as Cavium's Chief Executive Officer ("CEO"), President, and Chairman of the Board since co-founding the Company in 2000 along with Raghib Hussain, the Chief Operating Officer of the Company.

13. Defendant Anthony S. Thornley has served as a director of the Company since 2006.

14. Defendant Sanjay Mehrotra has served as a director of the Company since 2009.

15. Defendant Edward H. Frank has served as a director of the Company since 2016.

16. Defendant Brad W. Buss has served as a director of the Company since 2016.

17. Defendant Madhav V. Rajan has served as a director of the Company since 2013.

18. The Defendants referred to in paragraphs 12-17 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

**CLASS ACTION ALLEGATIONS**

19. Plaintiff brings this action as a class action, pursuant to Fed. R. Civ. P. 23 on behalf of all holders of the common stock of the Company (except the Defendants herein and

any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants) and their successors in interest, who are or will be threatened with injury arising from Defendants' actions as more fully described herein (the "Class").

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of December 19, 2017, there were reportedly in excess of 69,155,794 shares of Cavium common stock outstanding and owned by thousands, of shareholders.

22. There are questions of law and fact which are common to the Class including, *inter alia*, the following: (a) whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act; (b) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the S-4 in violation of Section 14(a) of the Exchange Act; (c) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (d) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading S-4.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. The claims of the Plaintiff are typical of the claims of other members of the Class and Plaintiff has the same interests as the other members of the Class. Plaintiff will fairly and adequately represent the Class.

24. Defendants have acted in a manner which affects Plaintiff and all members of the Class alike, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

25. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be

1  dispositive of the interests of other members or substantially impair or impede their ability to
2  protect their interests.

3  **SUBSTANTIVE ALLEGATIONS**

4  *The Proposed Transaction*

5  26.  On November 20, 2017, Cavium and Marvell announced that they had entered into the Agreement and Plan of Merger (the "Merger Agreement"), whereby Marvell would acquire Cavium, with the Company surviving the Proposed Transaction as an indirect, wholly-owned subsidiary of Marvell:

> **Santa Clara, and San Jose Calif. (November 20, 2017)** –Marvell Technology Group Ltd. (NASDAQ: MRVL) and Cavium, Inc. (NASDAQ: CAVM) today announced a definitive agreement, unanimously approved by the boards of directors of both companies, under which Marvell will acquire all outstanding shares of Cavium common stock in exchange for consideration of $40.00 per share in cash and 2.1757 Marvell common shares for each Cavium share. Upon completion of the transaction, Marvell will become a leader in infrastructure solutions with approximately $3.4 billion1 in annual revenue.
>
> The transaction combines Marvell's portfolio of leading HDD and SSD storage controllers, networking solutions and high-performance wireless connectivity products with Cavium's portfolio of leading multi-core processing, networking communications, storage connectivity and security solutions. The combined product portfolios provide the scale and breadth to deliver comprehensive end-to-end solutions for customers across the cloud data center, enterprise and service provider markets, and expands Marvell's serviceable addressable market to more than $16 billion. This transaction also creates an R&D innovation engine to accelerate product development, positioning the company to meet today's massive and growing demand for data storage, heterogeneous computing and high-speed connectivity.
>
> "This is an exciting combination of two very complementary companies that together equal more than the sum of their parts," said Marvell President and Chief Executive Officer, Matt Murphy. "This combination expands and diversifies our revenue base and end markets, and enables us to deliver a broader set of differentiated solutions to our customers. Syed Ali has built an outstanding company, and I'm excited that he is joining the Board. I'm equally excited that Cavium's Co-founder Raghib Hussain and Vice President of IC Engineering Anil Jain will also join my senior leadership team. Together, we all will be able to deliver immediate and long-term value to our customers, employees and shareholders."

> "Individually, our businesses are exceptionally strong, but together, we will be one of the few companies in the world capable of delivering such a comprehensive set of end-to-end solutions to our combined customer base," said Cavium Co-founder and Chief Executive Officer, Syed Ali. "Our potential is huge. We look forward to working closely with the Marvell team to ensure a smooth transition and to start unlocking the significant opportunities that our combination creates."
>
> The transaction is expected to generate at least $150 to $175 million of annual run-rate synergies within 18 months post close and to be significantly accretive to revenue growth, margins and non-GAAP EPS.
>
> \* \* \*
>
> **Management and Board of Directors**
>
> Matt Murphy will lead the combined company, and the leadership team will have strong representation from both companies, including Marvell's current Chief Financial Officer Jean Hu, Cavium's Co-founder and Chief Operating Officer Raghib Hussain and Cavium's Vice President of IC Engineering Anil Jain. In addition, Cavium's Co-founder and Chief Executive Officer, Syed Ali, will continue with the combined company as a strategic advisor and will join Marvell's Board of Directors, along with two additional board members from Cavium's Board of Directors, effective upon closing of the transaction.
>
> \* \* \*

27. Under the terms of the Merger Agreement, Cavium shareholders will receive $40.00 in cash and 2.1757 Marvell common shares for each share of Cavium common stock owned. The exchange ratio was based on a purchase price of $80 per share, using Marvell's undisturbed price prior to November 3, when media reports of the transaction first surfaced. This represents a transaction value of approximately $6 billion. Cavium shareholders are expected to own approximately 25% of the combined company on a pro forma basis.

*The Offer Price is Inadequate and Unfair*

28. The Merger Consideration agreed to in the Proposed Transaction is inadequate, and Defendants' claims that the transaction provides a great return for investors are false, in light of the Company's recent financial performance and prospects for future growth. For instance, the Company has reported double-digit sales growth and positive gross income growth since 2013. Most recently, the Company has reported positive EBITDA earnings for the last

four fiscal quarters, and positive EBITDA growth for three of those quarters.

29.     The Proposed Transaction benefits Marvell, as it adds much-needed growth as Cavium will help Marvell move towards cloud-based networking and application software and storage capabilities.

*The Materially Misleading and Incomplete Solicitation Statement*

30.     On December 21, 2017, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Transaction. The S-4 solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Financial Forecasts*

31.     The S-4 fails to provide material information concerning the Company's financial forecasts, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Transaction. S-4 at 114-15. These financial forecasts were also relied upon by the Company's financial advisors, Qatalyst and J.P. Morgan, in rendering their fairness opinion. S-4 at 97-98; 105.

32.     Specifically, the S-4 provides two sets of financial forecasts developed by Cavium's management, the Cavium Projections and the Adjusted Marvell Projections. S-4 at 114-15. As part of the forecast, the S-4 further discloses the values and definitions of several non-GAAP (Generally Accepted Accounting Principles) financial metrics: (1) Non-GAAP income from operations; (2) Non-GAAP net income per share, diluted; (3) Net Operating Profit After Taxes; (4) Unlevered Free Cash Flow; (5) Unlevered Free Cash Flow (including Stock-Based Compensation); and (6) EBITDA, but fails to provide: (i) the value of certain line items used to calculate these non-GAAP measures, or (ii) a reconciliation to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). S-4 at

114-15.

33.     Although the S-4 defines each of the aforementioned non-GAAP financial measures and discloses the line items used in each measures' calculation in accompanying footnotes, the S-4 fails to provide the values of these line items, and fails to reconcile each measure to its most comparable GAAP equivalent. S-4 at 114-15.

34.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

35.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Cavium included in the S-4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherrypicking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non- GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and

that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

36. The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading, and has therefore heightened its scrutiny of the use of such forecasts.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DIs") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

37. More importantly, the C&DI clarifies when the business combination exemption does not apply:

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

38. Thus, the C&DI makes clear that the so-called "business combination" exemption

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgnspeech.html. (emphasis added).

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-thesecs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-losses-into-profits.html?_r=0.

[3] *Non-GAAP Financial Measures*, U.S. Securities and Exchange Commission (Oct. 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101. To be sure, there are other situations where Regulation G would not apply but are not applicable here.

from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party such as financial banker has utilized projected non-GAAP financial measures to render a report or opinion to the Board. To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

39. Because the S-4 explicitly discloses that the Board considered the forecasts of future financial and operational results of the combined company, no exemption from Regulation G is applicable. S-4 at 113.

40. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the S-4 not misleading. Indeed, the Defendants acknowledge the misleading nature of non-GAAP financial measures, as Cavium stockholders are cautioned:

> The Unaudited Prospective Financial Information includes certain non- GAAP financial measures. Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Marvell and Cavium may not be comparable to similarly titled amounts used by other companies.

41. Thus, to bring the S-4 into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information on page 115, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

*Conflicts of Interests - Post-Transaction Employment Arrangements*

42. The S-4 discloses that Marvell entered into post-close employment arrangements with at least six key Cavium employees including Cavium's Chief Operating Officer, Raghib Hussain, and Corporate Vice President, Anil Jain. S-4 at 78; 123-24. The S-4 also discloses that "on October 31, 2017, representatives of Marvell began evaluating the compensation for certain key employees of Cavium . . . for the purpose of delivering offer letters, which would be contingent upon the closing of the proposed transaction . . ." S-4 at 72.

43.    These disclosures are materially misleading and must be corrected. First, the aforementioned disclosures fail to provide shareholders with material information regarding the timing of the discussions about post-close employment arrangements. Although the S-4 discloses that compensation evaluations began on October 31, 2017, it does not disclose when discussions that Marvell wished to retain certain key employees began. Without this information, Cavium shareholders are unable to discern whether Cavium's Board acted appropriately in allowing management's, especially Hussain's, continued involvement in the sale process. Thus, the omission of information surrounding the timing of employment discussions renders the S-4 materially misleading.

44.    In sum, the S-4 independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Transaction from Cavium shareholders.

45.    Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**FIRST CAUSE OF ACTION**
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

46.    Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

47.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

48. As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

49. The failure to reconcile the numerous non-GAAP financial measures included in the S-4 violates Regulation G and constitutes a violation of Section 14(a).

## SECOND CAUSE OF ACTION
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

50. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

51. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

52. Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading." 17 C.F.R. § 244.100(b).

53. Defendants have issued the S-4 with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the

dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company and Marvell.

54. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

55. The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

56. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

57. The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

58. Cavium is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

59. The misrepresentations and omissions in the S-4 are material to Plaintiff and the

Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

60. Plaintiff and other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## THIRD CAUSE OF ACTION

**(Against The Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

61. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62. The Individual Defendants acted as controlling persons of Cavium within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cavium, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing the S-4.

65. In addition, as the S-4 sets forth at length, and as described herein, the Individual

- 14 -

1  Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The
2  S-4 purports to describe the various issues and information that the Individual Defendants
3  reviewed and considered. The Individual Defendants participated in drafting and/or gave their
4  input on the content of those descriptions.

5  66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a)
6  of the Exchange Act.

7  67. As set forth above, the Individual Defendants had the ability to exercise control
8  over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9
9  by their acts and omissions as alleged herein. By virtue of their positions as controlling persons,
10 these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and
11 proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably
12 harmed.

13 68. Plaintiff and the Class have no adequate remedy at law. Only through the exercise
14 of this Court's equitable powers can Plaintiff and the Class be fully protected from the
15 immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiffs and members of the Class demand judgment against Defendants as follows:

A. Declaring that this action is properly maintainable as a class action and certifying Plaintiff as a representative of the Class;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C. In the event that the proposed transaction is consummated, rescinding it and setting it aside, or awarding rescissory damages to the Class;

D. Awarding compensatory damages against Defendants, individually and severally, in an amount to be determined at trial, together with pre-judgment and post-judgment interest at

1  the maximum rate allowable by law, arising from the proposed transaction;

2       E.     Awarding Plaintiff the costs and disbursements of this action and reasonable

3  allowances for fees and expenses of Plaintiff's counsel and experts; and

4       F.     Granting Plaintiff and the Class such other and further relief as the Court may

5  deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: January 8, 2018            **FARUQI & FARUQI, LLP**

By:    */s/ Benjamin Heikali*
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: (424 )256-2884
Facsimile: (424 )256-2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

**Of Counsel**:

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gregory M. Nespole
Benjamin Kaufman
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

Betsy C. Manifold, Bar No. 182450
Rachele R. Rickert, Bar No. 190634
750 B. Street, Suite 2770
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

*Counsel for Plaintiff*

# CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAW

Shiva Stein, ("Plaintiff") declares as to the claims asserted, or to be asserted, under the federal securities laws, that:

1. Plaintiff has reviewed the Class Action Complaint For Violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Complaint"), retained Wolf Haldenstein Adler Freeman & Herz LLP as counsel in this action for all purposes, and authorized the filing of the Complaint.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. Plaintiff has made the following transaction(s) during the class period in the securities that are subject of this action:

| Security | Transaction (Purchase/Sale) | Quantity | Trade Date |
|---|---|---|---|
| CAVM | Purchase | 5 | 6/2014 |
| | | | |
| | | | |
| | | | |
| | | | |

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

5. Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws within the past three years, unless otherwise stated in the space below:

*Shiva Stein v. Quiksilver, Inc. et al*, 2:15cv2810 (C.D. Cal.); *Shiva Stein v. Ampio Pharmaceuticals, Inc. et al*, 2:15cv3640 (C.D. Cal.).

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

7.  Plaintiff represents and warrants that it is fully authorized to enter into and execute this certification.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of January, 2018.

_____
Shiva Stein